# United States Court of Appeals
## For the First Circuit

No. 06-1001

JAMES W. MCCARTHY,

Plaintiff, Appellee.,

v.

CITIGROUP GLOBAL MARKETS INC.,

Defendant, Appellant.

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Lipez and Howard, Circuit Judges,
and Gorton,[*] U.S. District Judge.

John R. Skelton, with whom John F. Adkins, Carol E. Head, and
Bingham McCutchen LLP, were on brief for appellant.
    Stacey P. Nakasian, with whom William A. Jacobson, Shanna L.
Pitts, and the Law Offices of William A. Jacobson, Inc., were on
brief for appellee.

September 19, 2006

[*] Of the District of Massachusetts, sitting by designation

**LIPEZ**, **Circuit Judge**. In this appeal, we must review the district court's decision to vacate an arbitration award and remand on the ground that the award was in manifest disregard of the law. In an unusual circumstance, this is the second time in this case that the district court has vacated an arbitration award in favor of the appellee and remanded on that ground.

The award of the arbitration panel was not in manifest disregard of the law. Instead, the district court engaged in an analysis of the merits of the arbitration panel's award and found legal error. Such an analysis is proscribed by the standards of review that apply in this circuit to a district court's review of arbitration awards. Therefore, we must vacate the district court's ruling and direct the district court to enter a judgment confirming the arbitration award.

**I.**

**A. Factual Background**

Plaintiff James W. McCarthy ("McCarthy") was a financial consultant at Smith Barney, predecessor of Defendant Citigroup Global Markets Inc. ("CGMI"), from 1985 until his resignation in May 2003. As of 1993, he worked in the Manchester, New Hampshire office of CGMI. CGMI is an investment bank and brokerage firm with its principal place of business in New York City. It is a subsidiary of Citigroup Inc., one of the world's largest financial services companies.

While an employee, McCarthy participated in the Capital Accumulation Plan ("CAP Plan"), which was sponsored by CGMI's parent company, Traveler's Group, Inc. The CAP Plan is a program designed to retain employees by giving them the opportunity to purchase restricted shares of Citigroup, either in the form of Citigroup restricted stock at discounted prices on a tax-deferred basis, or as grants of non-qualified stock options for Citigroup common stock. An eligible employee must sign, at least annually, a form electing to participate in the CAP Plan, wherein the employee designates the amount of earnings he wants deducted from his paychecks and used in the CAP Plan.

Under the CAP Plan restricted stock program, the restricted stock is acquired at a twenty-five percent (25%) discount from market value and is purchased with wage deductions from payroll checks. However, the stock purchases are subject to a vesting period of two years. When the restricted shares vest, the participant pays ordinary income taxes and payroll taxes based on the market value of the shares on the vesting date, unless the participant has elected to pay taxes at the time of the payroll deduction. McCarthy had paid income and payroll taxes on many of the shares at issue here. If a participant in the CAP Plan resigns, as McCarthy did, the participant forfeits both the unvested restricted shares and the wages deducted from the paychecks. The unvested restricted shares are cancelled, the

-3-

underlying restricted Citigroup stock reverts to Citigroup, and CGMI does not return the wages to the participant. Under the CAP Plan stock option program, a participant can choose to receive up to one-third of the restricted shares in the form of non-qualified stock options on Citigroup common stock. If employment terminates voluntarily, unvested options may not be exercised. As with the restricted stock program, when an option is exercised, income and payroll taxes are withheld.

McCarthy resigned on May 9, 2003. From 1993 until his resignation, McCarthy voluntarily elected in writing to direct the equivalent of 20-25% of his compensation to be invested through the CAP Plan. He participated mostly in the restricted stock plan, but at times also purchased stock options under the CAP Plan. McCarthy sought to recover his contributions to the CAP Plan that had resulted in the purchase of unvested shares, as well as funds that had not been used to purchase shares. Pursuant to the terms of the CAP Plan, these contributions had been forfeited.

B. **Procedural Background**

Pursuant to the parties' arbitration agreement and the regulatory framework of the securities industry, McCarthy commenced arbitration proceedings against CGMI with the National Association of Securities Dealers ("NASD") on December 29, 2003.[1] McCarthy

---

[1] The NASD is the primary self-regulatory organization responsible for the regulation of persons and companies involved in the securities industry in the United States, with delegated

asserted statutory claims under the New Hampshire wage laws (the "Wage Law") and equitable claims.

A hearing was held on November 18, 2004 (the "First Hearing"). The arbitrators in the First Hearing (the "First Panel") ruled in favor of CGMI and dismissed McCarthy's claims (the "First Award"):[2]

> [McCarthy's] request for relief is denied. The evidence and documents presented in evidence at the hearing demonstrated that [McCarthy] knowingly and willingly participated in the [CAP Plan] by signing the election forms twice a year for several years. [McCarthy] benefitted financially from participation in the [CAP Plan] to a substantial degree over the years. While [McCarthy] invoked New Hampshire wage law to support his case, the Panel considered it irrelevant because the Panel considered the case to be a contract dispute regarding an inventive compensation plan commonly used at the firm and commonly used in the securities industry.

On December 16, 2004, McCarthy asked the district court to vacate the First Award. CGMI cross-moved to confirm it. Focusing on the language above, the district court remanded the matter to the NASD for further arbitration proceedings ("First Remand Order"):

---

authority from the U.S. Securities and Exchange Commission. See "About NASD", http://www.nasd.com/AboutNASD/index.htm (last visited August 15, 2006).

[2] In the context of arbitration, an "award" can denote both the decision an arbitration panel reaches and the authenticated document containing the decision. See 2 Martin Domke, Domke on Commercial Arbitration, Appx. B-1 § 19(a) (3d. ed. 2003)("An arbitrator shall make a record of an award. The record must be signed or otherwise authenticated by any arbitrator who concurs with the award. The arbitrator or the arbitration organization shall give notice of the award, including a copy of the award, to each party to the arbitration proceeding.").

> The [arbitration] panel does not appear to have intended "irrelevant" to have its usual meaning. Instead, the panel concluded that McCarthy was not protected by the wage laws because he had profited from the CAP in the past and had voluntarily agreed to its terms. As such, the panel acknowledged the applicability of the wage laws but decided not to apply them because of the circumstances attending McCarthy's claim. The panel also decided not to consider the wage laws because plans like the CAP are commonly used in the securities industry. In doing so, the panel set aside the governing law in favor of its perception of an equitable result and industry practices. The panel's decision not to consider the New Hampshire wage laws demonstrates its disregard for the governing law.

The district court concluded that "the case must be remanded to have McCarthy's claim decided under the New Hampshire wage laws through arbitration." Although CGMI filed an appeal from the First Remand Order (the "First Appeal"), it never pursued that First Appeal. Instead, CGMI voluntarily withdrew it. On March 18, 2005, we entered a judgment dismissing the First Appeal and sending the case back to the district court.

McCarthy re-filed his claim with the NASD, which convened a second arbitration panel comprised of three new arbitrators (the "Second Panel"). McCarthy withdrew all of his equitable claims, moving forward with only his claims based on New Hampshire law. The parties submitted briefs to the Second Panel, along with copies of the Wage Law, case law, the district court's First Remand Order, the CAP Plan documents, and exhibits reflecting McCarthy's participation in the CAP Plan. The Second Panel heard argument and testimony from several witnesses on August 2, 2005 (the "Second

Hearing"). CGMI argued that the CAP Plan did not violate the Wage Law and, in the alternative, that McCarthy was not entitled to any damages regardless of the status of the CAP Plan under the Wage Law.[3] McCarthy asserted that the First Remand Order required the Second Panel to apply the Wage Law to his claims, and under the Wage Law the CAP Plan was illegal. On August 18, 2005, the Second Panel issued its award denying McCarthy's claims with prejudice (the "Modified Award"):

> [McCarthy] requested that the panel . . . declare that the CAP Plan is illegal under New Hampshire law, to the extent the CAP Plan is implemented (i) through wage deductions, which are not actually used to purchase stock in Citigroup, or (ii) so as to cause employees to forfeit wages.
>
> . . .
>
> The Panel heard testimony from [McCarthy] and witnesses of both parties and considered the documentary evidence from each side as well. The Arbitrators fully considered all claims and defenses, including the applicability of the New Hampshire Wage Laws, which were heavily argued on both sides . . . . After full consideration of the matter, the panel decided to deny all claims with prejudice.

On September 8, 2005, McCarthy filed with the district court a motion to vacate the Modified Award, asserting again that the arbitrators had manifestly disregarded controlling law. McCarthy also claimed that the award should be vacated because CGMI

---

[3] CGMI asserted that "McCarthy is not entitled to any damages because, if he held all his vested shares, McCarthy netted over one million dollars from voluntarily participating in the CAP Plan, and CGMI is entitled to recover those shares or their market value in excess of McCarthy's cost of any unvested stock."

-7-

improperly encouraged the arbitrators to ignore the district court's legal findings as they were set forth in the First Remand Order, and because the arbitrators refused to be polled as to whether they would follow the law. CGMI again filed a cross-motion for confirmation of the award.

In a Second Remand Order dated December 15, 2005, the district court vacated the Modified Award because it was in manifest disregard of the law, denied CGMI's cross-motion for confirmation of the award, and remanded the case for a third arbitration proceeding, if necessary (the court urged the parties to settle).[4]

## II.

## A.  Standard of review

We review a district court's decision to vacate or confirm an arbitration award de novo. See Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000). The touchstone for review of arbitration awards is 9 U.S.C. § 10.[5]  "Section 10

---

[4] In the Second Remand Order, the district court rejected McCarthy's "polling" argument, stating that McCarthy had "cited no case or any other legal authority supporting his request for a poll." McCarthy did not renew this argument on appeal and we do not address it.

[5] In relevant part, 9 U.S.C. § 10 states:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration --

-8-

authorizes vacatur of an award in cases of specified misconduct or misbehavior on the arbitrators' part, actions in excess of arbitral powers, or failures to consummate the award." Advest, Inc., v. McCarthy, 914 F.2d 6, 8 (1st Cir. 1990); see also Nat'l Cas. Co. v. First State Ins. Group, 430 F.3d 492, 497 n.4 (1st Cir. 2005). "Courts do, however, retain a very limited power to review arbitration awards outside of section 10." Advest, 914 F.2d at 8. As we have put it:

> In the main, a successful challenge to an arbitration award, apart from section 10, depends upon the challenger's ability to show that the award is (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact.

Id. at 8-9 (quoting Local 1445, United Food & Commercial Workers v. Stop & Shop Cos., 776 F.2d 19, 21 (1st Cir. 1985)(internal quotation marks omitted). In some of our cases, we have referred to this non-statutory standard of review as "manifest disregard of

---

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

the law." <u>Wonderland Greyhound Park, Inc.</u> v. <u>Autotote Sys., Inc.</u>, 274 F.3d 34, 35 (1st Cir. 2001).[6] We have elaborated that we mean by "manifest disregard of the law" a situation "where it is clear from the record that the arbitrator recognized the applicable law -- and then ignored it." <u>Advest</u>, 914 F.2d at 9. To succeed under this standard "there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it." <u>Advest</u>, 914 F.2d at 10 (quoting <u>O.R. Securities, Inc.</u> v. <u>Prof'l Planning Assoc., Inc.</u>, 857 F.2d 742, 747 (11th Cir. 1988). "'[D]isregard' implies that the arbitrators appreciated the existence of a governing legal rule but <u>wilfully</u> decided not to apply it." <u>Id.</u> (emphasis added).[7]

---

[6] In <u>P.R. Tel. Co., Inc.</u> v. <u>U.S. Phone Mfg. Corp.</u>, 427 F.3d 21 (1st Cir. 2005), we stated that "[u]nder the FAA, an award may be vacated for legal error only when in 'manifest disregard of the law.'" <u>Id.</u> at 25. Insofar as this statement means that the FAA does not foreclose extra-statutory judicial review of arbitration awards on a limited basis, e.g. the "manifest disregard of the law" standard, this statement is correct. However, insofar as this statement means that the "manifest disregard of the law standard" is a part of the FAA itself, it would be mistaken. Nowhere in 9 U.S.C. § 10 does the phrase "manifest disregard of the law" appear. See <u>Advest</u>, 914 F.2d at 9 n.5 ("The lane of review that has opened out of this language is a judicially created one, not to be found in 9 U.S.C. § 10.").

[7] <u>See also Domke</u>, § 38:9 ("Although subject to slight variations in wording, courts generally apply the following two part test in determining if the award should be vacated for manifest disregard of the law: (1) Did the arbitrator know of the governing legal principal yet refused to apply it or ignored it all together? and (2) Was the law ignored by the arbitrators well defined, explicit and clearly applicable to the case? Only if the court determines that both prongs of this test are satisfied will it overturn an award for manifest disregard of the law.").

**B. The district court's reasoning**

On appeal, CGMI maintains that the Second Panel's Modified Award was improperly vacated under the manifest disregard of the law standard. McCarthy, inter alia, asserts that the district court's Second Remand Order was correct.

**1. The First Remand Order**

Although not the subject of this appeal, the court's First Remand Order provides a useful insight into its reasoning in this case. As noted above, the First Panel explained the First Award against McCarthy in these terms:

> While [McCarthy] invoked New Hampshire wage law to support his case, the Panel considered it irrelevant because the Panel considered the case to be a contract dispute regarding an inventive compensation plan commonly used at the firm and commonly used in the securities industry.

(Emphasis added.) Focusing on the Panel's use of the word "irrelevant", the district court concluded that "the panel set aside the governing law in favor of its perception of an equitable result and industry practices. The panel's decision not to consider the New Hampshire wage laws demonstrates its disregard for the governing law." The court saw the First Panel's reasoning as an instance "where it is clear from the record that the arbitrator[s] recognized the applicable law -- and then ignored it." Advest, 914 F.2d at 9. Lest there be any doubt about this point, the court explained again in the Second Remand Order the problem with the First Award: "In the first award, the panel stated

-11-

that the New Hampshire wage laws were irrelevant. As such, the panel explicitly disregarded the governing law." The court's First Remand Order, given the court's interpretation of the First Award, was a conventional application of the manifest disregard of the law standard.

### 2. The Second Remand Order

The district court's application of the manifest disregard of the law standard to the Modified Award presents a different story. We again quote the reasoning of the Second Panel in the Modified Award:

> The Panel heard testimony from [McCarthy] and witnesses of both parties and considered documentary evidence from each side as well. The Arbitrators fully considered all claims and defenses, including the applicability of the New Hampshire Wage Laws, which were heavily argued by both sides. After full consideration of the matter, the Panel decided to deny all claims with prejudice.

The district court focused on the Second Panel's statement that it had "fully considered all claims and defenses, including the applicability of the New Hampshire Wage Laws," and found in that statement a troubling ambiguity. As the court explained in its Second Remand Order:

> [t]he [Second] panel did not say whether it concluded that the wage laws were applicable or not applicable or whether it had applied that law in making its decision. Therefore, while the second panel's statement did not clearly demonstrate a manifest disregard of the governing law, as the first panel did, the second panel left open the possibility that, contrary to the court's direction in the [First] remand order, the panel concluded that the New Hampshire wage laws do not apply.

-12-

The district court acknowledged that the mere "possibility that . . . the panel concluded that the New Hampshire wage laws do not apply" is not itself a manifest disregard of the law.[8]  As the district court put it: "[T]he second panel's statement did not clearly demonstrate a manifest disregard of the governing law, as the first panel did."  In the absence of such an expression of manifest disregard of the law in the Modified Award itself, the district court decided to pursue a further inquiry:

> In the first award, the panel stated that the New Hampshire wage laws were irrelevant.  As such, the panel explicitly disregarded the governing law so that <u>it was not necessary to look behind that decision to determine its basis.</u>

(Emphasis added.)

There is authority in our precedents for a court to go behind the award of an arbitration panel to the record itself in

---

[8]We disagree with the district court that the Modified Award of the Second Panel can be read as a possible statement that the New Hampshire wage law is irrelevant, particularly in light of the explicit statement by the Second Panel that it "fully considered all claims and defenses, including the applicability of the New Hampshire Wage Laws, which were heavily argued by both sides."  If the court had vacated the award of the Second Panel on this basis alone, we would have simply vacated its judgment on this misreading of the Modified Award.  However, as we explain below, the district court also identified a second possibility in the Modified Award – namely, that the Second Panel had applied the New Hampshire wage law and still found the CAP lawful.  In looking behind the award of the Second Panel to determine its basis, the court explained in its decision why this second possibility would also be a manifest disregard of the law.  Focusing on that explanation in the balance of our opinion, we explain its incompatibility with the narrow scope of review that a court must observe in reviewing the decision of an arbitration panel.

conducting a manifest disregard of the law inquiry. For example, we have said that "there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it." Advest, 914 F.2d at 10 (emphasis added). But resorting to the record in search of manifest disregard of the law is constrained by the narrow scope of the manifest disregard of the law standard itself. To repeat, manifest disregard of the law means, at its core, that "arbitrators knew the law and explicitly disregarded it." P.R. Tel. Co., 427 F.3d at 32 (internal quotation marks omitted). "Put differently, disregard implies that the arbitrators appreciated the existence of a governing legal rule but wilfully decided not to apply it." Id. (internal citation and quotation marks omitted).

The manifest disregard of the law inquiry must not run afoul of the well-established principle that courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987); see also Poland Spring Corp. v. United Food & Commercial Int'l Union, 314 F.3d 29, 33 (1st Cir. 2002) (a court does not conduct appellate review "to hear claims of factual or legal error by an arbitrator or to consider the merits of an award"). "Even where such error is painfully clear, courts are not authorized to

-14-

reconsider the merits of arbitration awards." Advest, 914 F.2d at 8 (internal quotation marks and citation omitted).

The district court did not observe this limitation on its authority to review an arbitration award. Instead of finding manifest disregard of the law by the Second Panel, it found an application of the Wage Law with which it disagreed. To demonstrate this point, we quote several excerpts from the court's Second Remand Order:

> CGMI's arguments to the arbitration panel, that the CAP was lawful because McCarthy's compensation, paid in cash and restricted stock, conferred a benefit to him, because McCarthy had agreed to participate in the CAP and was a sophisticated and intelligent financial consultant, and because McCarthy had benefitted in the past from the CAP, are not pertinent to the principles of New Hampshire law. Instead, CGMI's argument is based on the reasoning of the Court of Appeals of New York . . . . CGMI represented to the arbitration panel that the New Hampshire wage laws allowed deductions as long as they accrued 'to the benefit of the employee,' . . . that the New Hampshire laws, like the New York law, allowed [such] a deduction . . . .
>
> [But] under New Hampshire law, unlike New York law, a deduction is not lawful simply because it accrues to the benefit of an employee . . . .
>
> CGMI also argued that the CAP was a lawful deduction as a payment into a savings fund held by someone other than the employer and that it was empowered by the federal tax treatment of similar plans to offer the CAP . . . . Neither argument is persuasive.
>
> Nevertheless, it is perhaps arguable that the panel was sufficiently confused or misled by CGMI's arguments to conclude that the CAP deductions comported with New Hampshire law. Even assuming that the CAP deductions were lawful, however, CGMI did not offer the arbitration panel any justification under New Hampshire law for its failure to pay McCarthy the compensation that he had

-15-

earned before he resigned. CGMI's oft-repeated theory . . . does not comport with New Hampshire law.

After this extensive merits review, the district court concluded:

In the absence of any explanation, there appears to be no arguable or plausible basis for the [Second] panel to have ruled either that the New Hampshire wage laws did not apply to McCarthy's claims or that CGMI's failure to pay McCarthy earned compensation, based on the forfeiture provision in the CAP, was lawful. In either case, the panel's decision necessarily was made in manifest disregard of the law.

To make its meaning unmistakable, the district court added in a footnote to its decision that "[b]ecause neither alternative basis for the decision is reasonable, given the governing law, a remand for clarification would not be beneficial here." Therefore, if there were to be a third arbitration proceeding, the district court directed that a new panel be convened. In that circumstance, the court said the parties were "to request that the arbitration panel provide an explanation or reasons for its decision to allow meaningful judicial review."

Although the district court's legal analysis of the relationship between the Wage Law and the CAP Plan was thoughtful (indeed, the court was thoughtful about this case throughout the lengthy proceedings), there are several errors in the district court's Second Remand Order. First, with its insistence that the next arbitration panel, if one were constituted, provide an explanation or reasons for its decision to allow meaningful

-16-

judicial review, the court ignored the basic principle that "arbitrators need not explain their award" at all. P.R. Tel. Co., 427 F.3d at 32 (internal citation omitted). Second, although it theoretically left open the possibility that a third arbitration panel could explain why McCarthy's claim failed under New Hampshire law, the court's elaborate rejection of that possibility in its Second Remand Order delivered an unmistakable message to a third panel -- such a decision would be difficult to justify. Courts should avoid such messages when remanding cases to arbitration panels. See Domke, § 30:6 ("[C]areful consideration should also be given that remanding the case does not make the court itself decide the issue in controversy or instruct the arbitration in such direction.").

Third, in looking behind the Modified Award, the court did not examine the record of proceedings before the panel for manifest disregard of the law -- that is, "some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it." Advest, 914 F.2d at 10 (internal citation omitted). Instead, the court conducted its own analysis of the compatibility of the CAP Plan with the Wage Law and concluded that the Modified Award in favor of CGMI, absent some further explanation, was wrong. Moreover, in conducting that legal analysis, the court did not find that "rare" instance of manifest disregard we described in Advest, where "the governing law may have

-17-

such widespread familiarity, pristine clarity, and irrefutable applicability that a court could assume the arbitrators knew the rule and, notwithstanding, swept it under the rug."  914 F.2d at 10.  Instead, the court's analysis reveals a legal landscape devoid of statutory language or a decision of the New Hampshire Supreme Court that irrefutably proscribes the CAP Plan under the Wage Law. At most, after a merits analysis of the Modified Award, the district court arguably found a legal error in its result. However, our precedents forbid a district court from conducting such a review of an arbitration award.  See Poland Spring Corp., 314 F.3d at 33 (a court does not conduct appellate review "to hear claims of factual or legal error by an arbitrator or to consider the merits of an award").  We must therefore **vacate** the district court's Second Remand Order and direct the court to enter a judgment **confirming** the Second Panel's Modified Award.[9]  Each party is to bear its own costs.

   **So ordered**.

---

   [9] Relying on Montes v. Shearson Lehman Bros., Inc., 128 F.3d 1456 (11th Cir. 1997), where the court found an award in manifest disregard of the law, McCarthy also asserts that CGMI "undermined the integrity of the Second Hearing" by "repeatedly urg[ing] the Second Panel during oral argument to disregard the law," and that this conduct constitutes an independent basis for vacating the Modified Award.  The district court rejected that argument:  "the circumstances in this case are not sufficiently similar to those in Montes to permit application here of that narrowly limited decision."  We see no reason to disturb this ruling.