NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0696n.06
Filed: November 14, 2008

No. 07-1830

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **COFFEE BEANERY, LTD., ET AL.**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Petitioners-Appellees*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| *v.* | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **WW, L.L.C.; DEBORAH WILLIAMS; and RICHARD WELSHANS**, | ) | **AMENDED OPINION** |
| | ) | |
| *Respondents-Appellants*. | ) | |

**BEFORE:** **COLE and CLAY, Circuit Judges; RUSSELL, District Judge**.*

**COLE, Circuit Judge.** Respondent-Appellant WW, L.L.C. and its two principal owners,
Richard Welshans and Deborah Williams (collectively, "WW"), appeal the district court's denial of
their motion to vacate an arbitration award. At issue is whether the Arbitrator showed a manifest
disregard of the law when she issued her award. Because we conclude that the failure to disclose
a prior felony conviction for grand larceny violates the Maryland Franchise Registration and
Disclosure Law ("Franchise Act"), Md. Bus. Reg. Code Ann. § 14-216(8)(i), and because the
Arbitrator showed a manifest disregard of the law in concluding otherwise, we **REVERSE** the
judgment of the district court and **VACATE** the Arbitrator's award.

---

* The Honorable Thomas B. Russell, United States District Judge for the Western District
of Kentucky, sitting by designation.

## I. BACKGROUND

Petitioner-Appellee, The Coffee Beanery Ltd., is a Michigan corporation with its principal place of business in Flushing, Michigan. Its primary business is to sell and operate Coffee Beanery franchises across the United States. The remaining Petitioners-Appellees, Joanne Shaw, Julius Shaw, Kevin Shaw, Kurt Shaw, Ken Coxen, Walter Pilon, and Owen Stearn, are officers of the company (collectively, "the Coffee Beanery"). WW, L.L.C. is a Maryland corporation with its principal place of business in Annapolis, Maryland.

This dispute arises out of a failed business agreement to license a Coffee Beanery Cafe. In Spring of 2003, Richard Welshans and Deborah Williams, husband and wife, began researching the idea of opening a small coffee shop that would sell coffee and other beverages. The two arranged a meeting with Kevin Shaw, the Coffee Beanery's Vice President of Real Estate, to discuss the details of a purchase and a potential location for a store.

In June 2003, Richard and Deborah attended a Coffee Beanery "discovery day" at the headquarters in Flushing, Michigan to investigate the purchase of a franchise. During this trip, Coffee Beanery representatives took the two on a tour of the company-owned Coffee Beanery Cafe, where they met some employees and sampled food and beverages. That same day, Richard and Deborah agreed to license a Cafe Store in Annapolis, Maryland, and signed a franchise agreement to purchase and operate a store. With the consent of the Coffee Beanery, the rights, title and interest in and obligations under this agreement were later assigned to WW, L.L.C.

The parties have different versions of what happened during this meeting. According to Richard and Deborah, they had originally intended to purchase a traditional Coffee Beanery store, but several representatives of the Coffee Beanery, including Shaw, encouraged them to purchase a Cafe Store, suggesting that the Cafe Stores were potentially more lucrative, in part, because they were not "seasonal." In a private meeting after the tour, Shaw asked them, "Can you get by on $125,000?," and presented a pro forma financial work sheet containing information about input costs for operations and projected income. Based on what Richard and Deborah assert to be false representations, they agreed to purchase and operate a Cafe Store, which required an initial franchise fee of $25,000. The Coffee Beanery, unsurprisingly, believes that it provided adequate, proper and timely disclosure, sufficient training, comprehensive assistance, and made no false representations.

After its opening in 2003, WW's Cafe Store immediately encountered numerous difficulties. Spurned by significant losses, in January 2005, WW sent the American Arbitration Association ("AAA") and the Coffee Beanery a Demand for Mediation and Arbitration. The nature of the dispute, according to the demand, included fraud, negligent misrepresentation, fraudulent misrepresentation, fraudulent non-disclosure, breach of contract, breach of the covenant of good faith and fair dealing, violations of the Maryland Franchise Registration and Disclosure Law, Michigan Franchise Investment Law, and the Michigan Consumer Protection Act.

The arbitration process hit a snag when counsel for WW sent an email to AAA retracting its earlier demand for arbitration, because "the arbitration clause in the franchise agreement is limited to controversies between [the Coffee Beanery] and Store Owner." "The legal action that my clients are considering," the email explained, does not "fall within the scope of the arbitration agreement,"

and therefore "any arbitration requirement would also be of no force and effect." Based on those reasons, on December 15, 2005, WW abandoned arbitration altogether and filed suit in the United States District Court for the District of Maryland, alleging violations of the Maryland Franchise Act and seeking relief under other state-law claims for detrimental reliance, intentional misrepresentation, and negligent misrepresentation.

Independently, on January 19, 2006, the Securities Commissioner of Maryland ("Commissioner") issued an administrative "Order to Show Cause" against the Coffee Beanery and Kevin Shaw, alleging violations of the disclosure and anti-fraud provisions of the Franchise Act, Md. Bus. Reg. Code Ann. § 14-210 *et seq*. The substance of the Commissioner's claims was nearly identical to WW's allegations—namely, that the Coffee Beanery made material misrepresentations in connection with the offer and sale of Cafe Store franchises, that Shaw inappropriately told prospective buyers that they could expect a specific income level from the operation of a Cafe Store, and that the Coffee Beanery failed to timely provide prospective franchisees a copy of the offering prospectus and a proposed franchise agreement.

On January 30, 2006, eleven days after the Commissioner issued her Order, the Coffee Beanery responded in kind by filing a petition to compel arbitration in the United States District Court for the Eastern District of Michigan. The Coffee Beanery alleged that, under the arbitration clause of the franchise agreement, any claim or controversy arising out of or related to the franchise agreement should be settled by arbitration.

The district court granted the Coffee Beanery's petition to compel arbitration and refused to stay the case.[1] *Coffee Beanery v. WW L.L.C.*, No. 06-10408, 2006 WL 2033929 (E.D. Mich. July 18, 2006) ("*Coffee Beanery I*"). But before arbitration could proceed, on September 12, 2006, the Commissioner reached a Consent Order with the Coffee Beanery and Shaw, under which the Coffee Beanery and Shaw acknowledged that they had violated the Maryland Franchise Act by making material misrepresentations of fact or omissions of material fact to prospective Maryland franchisees, and by failing to give prospective franchisees a copy of the offering prospectus. This Order required the following: (1) that the Coffee Beanery and Shaw cease selling franchises in violation of Maryland Franchise Law; and (2) that WW be entitled to a rescission offer that would be kept open for thirty days from the date of notice. Under the explicit terms of the Order, however, the Coffee Beanery retained the right to "deny any statement of fact or conclusion of law of the Consent Order in any proceeding, litigation, or arbitration against them in which the Commissioner is not a party."

WW never accepted the rescission offer. Instead, in January 2007, it submitted its claims to arbitration in Ann Arbor, Michigan. Arbitrator JoAnne Barron presided over an eleven-day hearing that included testimony from WW, other Cafe Store owners, and representatives from the Coffee Beanery. On March 28, 2007, the Arbitrator issued an award finding in favor of the Coffee Beanery on all claims.

---

[1] On March 23, 2006, the Maryland district court issued an order staying the case in deference to the state administrative proceedings and the Eastern District of Michigan, and administratively closed the case.

On April 18, 2007, WW filed a motion to vacate the arbitration award in the Eastern District of Michigan. The district court issued an order and opinion denying the motion to vacate and confirming the award. *Coffee Beanery v. WW L.L.C.*, 501 F. Supp. 2d 955 (E.D. Mich. 2007) ("*Coffee Beanery II*"). The court found: that WW failed to establish "evident partiality" on the part of arbitrator as a ground to vacate the award; that the parties were not required to engage in mediation prior to proceeding to arbitration; that WW failed to establish fraud or perjury; and that the Arbitrator did not manifestly disregard either facts or laws when she ignored the findings made by the Commissioner. *Id.*

On June 4, 2007, WW sought reconsideration of the district court's opinion and order, which the district court denied. *Coffee Beanery v. WW L.L.C.*, No. 06-10408, 2007 WL 2335135 (E.D. Mich. Aug. 16, 2007) ("*Coffee Beanery III*"). WW timely appealed.

## II. ANALYSIS

When reviewing a district court's decision to confirm an arbitration award, we review questions of law de novo and review findings of fact for clear error. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 420 (6th Cir. 1995) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947-48 (1995)).

"The Federal Arbitration Act ('FAA') expresses a presumption that arbitration awards will be confirmed." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005). "'When courts are called on to review an arbitrator's decision, the review is very narrow; [it is] one of the narrowest standards of judicial review in all of American jurisprudence.'" *Id.* (quoting *Lattimer-Stevens Co. v. United Steelworkers*, 913 F.2d 1166, 1169 (6th Cir. 1990)). Section 10 of

the FAA sets forth the statutory grounds to vacate an arbitration award; namely: (1) where the award was procured by corruption, fraud, or undue means; (2) where an arbitrator evidenced partiality or corruption; (3) where the arbitrators were guilty of misconduct; and (4) where the arbitrators exceeded their power. 9 U.S.C. § 10(a)(1)-(4).

This Court's ability to vacate an arbitration award is almost exclusively limited to these grounds, although it may also vacate an award found to be in manifest disregard of the law. *Wilko v. Swan*, 346 U.S. 427, 436 (1953) (overruled on other grounds by *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477 (1989)). In *Wilko*, the Supreme Court implicitly recognized judicial review based on "manifest disregard" of the law when it stated that "the interpretations of the law by the arbitrators *in contrast to manifest disregard* are not subject, in the federal courts, to judicial review for error in interpretation." 346 U.S. at 436 (emphasis added). To constitute a manifest disregard for the law, "[a] mere error in interpretation or application of the law is insufficient. Rather, the decision must fly in the face of clearly established legal precedent." *Jaros*, 70 F.3d at 421. Thus, an arbitrator acts with manifest disregard if "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Id.*

In *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 128 S.Ct. 1396 (2008), the Supreme Court significantly reduced the ability of federal courts to vacate arbitration awards for reasons other than those specified in 9 U.S.C. § 10, but it did not foreclose federal courts' review for an arbitrator's manifest disregard of the law. The Court held that the FAA does not allow *private parties* to supplement by contract the FAA's statutory grounds for vacatur of an arbitration award. *Id.* at 1400.

Moreover, the Court rejected reading *Wilko* to allow any "general review for an arbitrator's legal errors." *Id.* at 1404. However, with respect to the judicially-invoked, narrow exception for an arbitrator's manifest disregard of the law, the Court acknowledged that "[m]aybe the term 'manifest disregard' [in *Wilko*] was meant to name a new ground for review," though it also suggested that narrower interpretations of *Wilko* were equally plausible. *Id.* at 1404. The Court did not come to a conclusion regarding the precise meaning of *Wilko*, holding only that *Wilko* could not be read to allow parties to expand the scope of judicial review by their own agreement. *Id.*

It is worth noting that since *Wilko*, every federal appellate court has allowed for the vacatur of an award based on an arbitrator's manifest disregard of the law. *See Jaros,* 70 F.3d at 421; *see also McCarthy v. Citigroup Global Mkts., Inc.*, 463 F.3d 87, 91 (1st Cir. 2006); *Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 64 (2d Cir. 2003); *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3rd Cir. 2003); *Three S Delaware Inc. v. DataQuick Info. Sys., Inc.*, 492 F.3d 520, 527 (4th Cir. 2007); *Prestige Ford v. Ford Dealer Computer Servs., Inc.*, 324 F.3d 391, 395-96 (5th Cir. 2003); *Halim v. Great Gatsby's Auction Gallery, Inc.,* 516 F.3d 557, 563 (7th Cir. 2008); *Manion v. Nagin, 392 F.3d 294, 298 (8th Cir. 2004); Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007); *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1275 (10th Cir. 2005); *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1017 (11th Cir. 1998). In light of the Supreme Court's hesitation to reject the "manifest disregard" doctrine in all circumstances, we believe it would be imprudent to cease employing such a universally recognized principle. Accordingly, this Court will follow its well-established precedent here and continue to employ the "manifest disregard" standard.

WW raises four arguments in support of vacating the Arbitrator's award. First, the Arbitrator overreached her authority when she ruled on the Franchise Act claims. Second, the franchise agreement was unconscionable. Third, the Arbitrator had a conflict of interest that rose to the level of bias. Fourth, the Arbitrator manifestly disregarded the law. With regard to this last claim, WW contends that the Arbitrator ignored undisputed evidence that it was misled about certain promotions and contracts, that Shaw made false representations about potential earnings, and that Shaw failed to disclose his prior felony conviction for grand larceny.

We begin and end with the very last argument, because we find it dispositive to the instant case. Because Shaw failed to disclose his prior felony conviction for grand larceny in violation of the Franchise Act, Md. Bus. Reg. Code Ann. § 14-216(8)(i), we conclude that the Arbitrator's award shows a manifest disregard of the law.

First, the fact that WW did not raise this claim before the district court until its motion for reconsideration does not defeat the claim on appeal. Although generally this Court will not consider an argument on appeal that was raised for the first time below in a motion for reconsideration, *see Am. Meat Inst. v. Pridgeon*, 724 F.2d 45, 47 (6th Cir. 1984), "[t]his waiver rule is one of prudence . . . and [is] not jurisdictional," *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 159 (2d. Cir. 2003) (citation and quotation marks omitted). We have generally considered the following factors in determining whether we should exercise our discretion to hear a previously waived argument: (1) whether the question is one of law or one that requires some factual development; (2) whether the proper resolution of the issue is clear beyond doubt; (3) whether the failure to take up the issue will result in a miscarriage of justice; and (4) the parties' right

to have their issues considered by both a district judge and an appellate court. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552-53 (6th Cir. 2008) (citing *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996)). Because it is a pure question of law whether Shaw's failure to disclose his prior grand larceny conviction violated the Franchise Act, and because there are no facts in dispute regarding this issue, we believe it appropriate to consider this argument raised for the first time in WW's motion for reconsideration. *See also Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 54 (2d Cir. 2004). This is especially true because the Coffee Beanery, the party supposedly benefitting from the waiver rule, failed to even mention the waiver issue on appeal. *Flowers*, 513 F.3d at 553 (explaining that one of the important reasons for the waiver rule is to ensure fairness to the non-moving litigant). *See also Lexicon, Inc. v. Safeco Ins. Co. of Am., Inc.*, 436 F.3d 662, 670 n.6 (6th Cir. 2006) (finding that issue raised for the first time in defendant's response to plaintiff's reply brief for summary judgment was not waived partly because both parties fully briefed the issue on appeal).

The Arbitrator found that the Coffee Beanery "was not required to disclose to [WW] that Kevin Shaw has a felony conviction for grand larceny as it is not the type of felony conviction subject to disclosure." We disagree. Under the Franchise Act, an offering prospectus must include "whether any person identified in the prospectus has been convicted of a felony . . . if the felony or civil action involved fraud, embezzlement, fraudulent conversion, or misappropriation of property." Md. Bus. Reg. Code Ann. § 14-216(8)(i). The language of this provision could not be any more clear: all persons identified in the offering prospectus must disclose any prior felony so long as it involves some "misappropriation of property," which by definition would include a conviction for grand larceny, regardless of the conduct giving rise to the conviction. *See, e.g.*, *Benton v. Maryland*,

395 U.S. 784, 803 (1969) (citing *Fletcher v. State*, 189 A. 2d 641 (1963)) ("Larceny in Maryland is a common-law crime, consisting of the taking and carrying away of the personal property of another with intent to deprive the owner of the property permanently."); Wayne R. LaFave, 3 Subst. Crim. L. § 19.2 (2007) ("Larceny at common law may be defined as the (1) trespassory (2) taking and (3) carrying away of the (4) personal property (5) of another (6) with intent to steal it.").

The result is that the Coffee Beanery and Shaw may be civilly liable to WW. The Franchise Act states, in no uncertain terms, that "[a] person who sells or grants a franchise is civilly liable to the person who buys or is granted a franchise if the person . . . by means of . . . any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, if the person who buys or is granted a franchise does not know of the . . . omission." Md. Bus. Reg. Code Ann. § 14-227(a)(1)(ii). Thus, the Arbitrator's contrary interpretation—that Shaw was not required to disclose this felony in the offering prospectus—"fl[ies] in the face of clearly established legal precedent." *Jaros*, 70 F.3d at 421.

Moreover, this is not the type of case in which the governing law has not been brought to the attention of the Arbitrator. *See id.* Instead, the record indicates that counsel for both parties generally agreed on the applicable law during arbitration (and still do on appeal). Indeed, the Coffee Beanery concedes that it failed to disclose Shaw's prior felony conviction, and argues only that it was not the type of conviction subject to disclosure under the Franchise Act.

True, we cannot say that the Arbitrator's conclusion that "the non-disclosure [of the felony] did not cause damage to Claimants" constitutes a refusal to heed a clearly defined legal principle. But we interpret this finding as relating to compensatory damages allowed for under the Franchise

- 11 -

Act, *see* Md. Bus. Reg. Code Ann. § 14-227(b) ("The person who buys or is granted a franchise may sue under this section to recover damages sustained by the grant of the franchise."), and not relating to the question of whether WW is entitled to a rescission of the franchise agreement, *see id.* § 14-227(c) ("A court may order the person who sells or grants a franchise to: (1) rescind the franchise; and (2) make restitution to the person who buys or is granted a franchise."). Because the Arbitrator expressly chose not to follow clearly established law regarding the disclosure of Shaw's prior felony, we believe the issue of whether WW is entitled to a rescission is more appropriately addressed when WW pursues its civil remedies available under the Franchise Act in a court of law.

Finally, the purpose of this provision of the Franchise Act is to allow parties to make informed decisions regarding whether to enter into a franchise agreement and with whom they choose to do business. Because WW was deprived of a mandatory, statutorily required notice, prior into entering into the franchise agreement, and did not have an opportunity to avoid being subjected to the consequences of having entered into the contract (including the requirement to arbitrate such claims), WW should not be bound by the arbitration provisions of the agreement which it was fraudulently induced into signing in violation of the Franchise Act.

## V. CONCLUSION

For those reasons, we **REVERSE** the judgment of the district court and **VACATE** the Arbitrator's award. Because the Coffee Beanery failed to disclose Shaw's felony conviction, WW need not resort to arbitration to vindicate its statutory rights but may instead seek appropriate relief in a court of law.

*No. 07-1830*
*Coffee Beanery, Ltd. v. WW, LLC*