**METRO HATO REY, INC., Plaintiff,**

v.

**UNIÓN INTERNACIONAL DE TRABAJADORES DE LA INDUSTRIA DE AUTOMOVILES, AEROESPACIAL E IMPLEMENTOS AGRICOLAS, UAW LOCAL 2312, Defendant.**

**Civil No. 13–1049 (PAD).**

United States District Court, D. Puerto Rico.

Signed June 25, 2014.

Alejandro Mendez–Roman, Miguel Amid Nieves–Mojica, Jimenez, Graffam & Lausell, San Juan, PR, for Plaintiff.

Miguel Simonet–Sierra, Simonet Sierra Law Office, Guaynabo, PR, for Defendant.

## OPINION AND ORDER

PEDRO A. DELGADO HERNANDEZ, District Judge.

This is an action to vacate a labor arbitration award. Plaintiff and defendant are parties to a collective bargaining agreement which provides for the processing of grievances in accordance with prescribed procedures.

Pursuant to the agreement, the parties submitted to arbitration the dismissal of Carmen Rojas, who had been discharged from her employment with Metro Hato Rey, Inc. d/b/a Hospital Pavia Hato Rey. The arbitrator decided Rojas was unjustly dismissed. Hospital Pavia contends the award should be vacated, and the Union claims it should be affirmed. For the reasons explained below, the award is affirmed.

## I. *BACKGROUND*

Hospital Pavia operates a hospital in Puerto Rico. The Hospital's Executive Director found Rojas, a practical nurse, sleeping during working hours in one of the hospital's nurse stations. Following an investigation, the Hospital terminated Rojas' employment. Dissatisfied with the

Hospital's determination, the Unión Internacional de Trabajadores de la Industria de Automóviles, Aeroespacial e Implementos Agrícolas initiated a grievance procedure on behalf of the employee. Eventually, the matter was submitted to arbitration. Following an evidentiary hearing, the arbitrator ruled that Rojas had been unjustly discharged, and ordered reinstatement with back pay and interest.

The Hospital sought review of the award in the Court of First Instance of Puerto Rico. The Union removed the action to this Court under 28 U.S.C. §§ 1441 and 1446 (Docket No. 1). Subsequently, the parties filed briefs in support of their respective positions. *See,* "Brief in Support of Request to Vacate Arbitration Award" (Docket No. 18), and "Opposition to Brief in Support of Request to Vacate Arbitration Award" (Docket No. 24).

## II. *DISCUSSION*

### A. STANDARD OF REVIEW

A federal court's review of an arbitrator's decision is extremely narrow and exceedingly deferential. *Ramos–Santiago v. United Parcel Service,* 524 F.3d 120, 123 (1st Cir.2008). It is among the narrowest known in the law. *Asociación de Empleados v. Unión Internacional,* 559 F.3d 44, 47 (1st Cir.2009). The rule serves the legislative policy that final adjustment by a method agreed upon by the parties is the desirable method for settlement of grievance disputes arising over the interpretation and application of an existing collective bargaining agreement. *In re Hotel Da Vinci,* 797 F.2d 33, 34 (1st Cir.1986).

In this model, the award is to be sustained unless (1) it is unfounded in reason and fact, (2) is based on reasoning so palpably faulty that no judge or group of judges could ever conceivably have made

such a ruling, or (3) is mistakenly based on a crucial assumption which is decidedly a non-fact. *UMass Memorial Medical Center v. United Food and Commercial Workers Union,* 527 F.3d 1, 4 (1st Cir.2008); *Challenger Caribbean v. Unión General de Trabajadores,* 903 F.2d 857, 861 (1st Cir. 1990). Measured by these standards, the award must be sustained.

### B. ARBITRATOR'S DECISION

The arbitrator was asked "[t]o determine [i]n accordance with the collective bargaining agreement, the evidence presented and the applicable law, whether ... [Rojas'] dismissal was appropriate ... [and] to provide a remedy congruent with the previous determination" (Docket No. 7, Exh. B at p. 21). Accordingly, he examined as indicated below, the agreement, the evidence, and applicable law. *Id.* at pp. 22–25.

### (1) *Collective Bargaining Agreement*

The arbitrator identified the relevant provisions of the collective bargaining agreement related to the Hospital's prerogatives and its limitations (Docket No. 7, Exh. B at pp. 22–23). To this end, Article XI, Section 11.1 of the agreement provides the Hospital shall retain the right to manage, direct, plan and administer its enterprises, as well as its labor force, in the form and the manner it deems convenient, subject only to those limitations arising expressly from the law and the agreement. *Id.* at p. 22.

Under Section 11.1(c), such faculties include but are not limited to disciplining and/or dismissing employees with just cause. Consistent with this provision, the Hospital adopted its Rules of Disciplinary Procedure. In turn, Rule 74 provides for dismissal as sanction for falling asleep during working hours. *Id.* at p. 23.

Pursuant to Article XIII, Section 5(f), the arbitrator has the faculty to reinstate employees to their jobs in case of dismissal, if it were determined that the dismissal was unjustified. *Id.*

### (2) *Evidence*

After conducting an evidentiary hearing, the arbitrator concluded that:

(i) Rojas was found sleeping during working hours at the nurses station of the eighth floor (Geriatrics), an exposed area accessible to the public, located in front of the elevators;

(ii) She admitted that she fell asleep, but does not know for how long;

(iii) She fell asleep involuntarily, as she did not deliberately adapt her workplace to lay down to sleep;

(iv) Her conduct hindered or limited the delivery of services she was called upon to render and even though the Hospital's image was not affected, it had the potential to adversely affect the image or the reputation of the Hospital as a health care institution;

(v) At that time, her work did not require rigorous supervision because the patients were not in a key stage of their recuperation process;

(vi) When she fell asleep she was surrounded by other nurses.

Building on this foundation, the arbitrator concluded that Rojas' dismissal was not justified (Docket No. 7, Exh. B at pp. 24–25).

### (3) *Law*

In evaluating the propriety of the dismissal, the arbitrator referred to Puerto Rico's Unjustified Dismissal Act, Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29 § 185a *et seq.* (Docket No. 7, Exh. B at p.

24). The statute makes certain employers liable for the dismissal without just cause of employees hired for undefined term; contains a general definition of just cause; provides guidance on the application of this concept to various scenarios related to employee misconduct and performance, reductions-in-force and shutdowns; and imposes on the employer the burden to establish just cause to avoid liability. P.R. Laws Ann. tit. 29 §§ 185b, 185k.

The general definition of just cause indicates what just cause is not, providing that a discharge made by the mere whim of the employer or without cause relative to the proper and normal operation of the establishment is not to be considered as a discharge for good cause. P.R. Laws Ann. tit. 29 § 185b. To restrict and guide the interpretation of this broadly formulated definition, the statute provides examples of just cause, among which it includes:

1. that the worker engage in a pattern of improper or disorderly conduct;

2. the employee's attitude of not performing his or her work in an efficient manner, or of doing it belatedly and negligently, or in violation of the standards of quality of the product produced or handled by the establishment; and

3. the employee's repeated violation of reasonable rules and regulations the employer adopts for the operation of the establishment, provided a written copy has been opportunely furnished to the employee. *Id.*

The concept of just cause is dynamic, and its application contextual. Courts have applied the concept to different scenarios, predicating liability upon the particular factual circumstances underlying dismissal.[1] The arbitrator followed a simi-

---

1. For a detailed and comprehensive discussion of this topic, *see* Jorge L. Capó–Matos, Employment at Will: A State–by–State Survey, Puerto Rico, *936–969 (BNA Books, Arlington, VA.2011).*

lar approach in determining whether Rojas' dismissal was justified.

### (4) *Reasoning*

Construing the concept of just cause, the arbitrator observed it encompasses three (3) questions: (1) whether the employee committed the offense; (2) whether the employee was granted due process; and (3) whether the disciplinary measure was reasonable (Docket No. 7, Exh. B at p. 24).

On the particular issue of sleeping on the job, the arbitrator observed that under what he described as prevailing doctrine, cases fall into three (3) categories:

1. the worker who is ill or tired for a good reason and who involuntarily drops off while trying to work;

2. the worker who has been out whooping it up while off duty and yields to the need for sleep during working hours; and

3. the worker who makes preparations, hides out, and goes to sleep as a regular practice.

(Docket No. 7, Exh. B at p. 25.)

Along the same line, the arbitrator indicated that in determining whether an employee's disciplinary penalty for sleeping on the job is warranted, arbitrators may consider mitigating factors such as whether the employee has inadvertently or accidentally fallen asleep. Relying on these criteria, he concluded that Rojas's dismissal was not justified (Docket No. 7, Exh. B at p. 25).

■ Given this background, the Court cannot conclude the award (1) is unfounded in reason and fact, (2) is based on reasoning so palpably faulty that no judge or group of judges could ever conceivably have made such a ruling, or (3) is mistakenly based on a crucial assumption which is decidedly a non-fact. The basis for this conclusion should become more apparent in the discussion of the arguments the Hospital has put forward in support of its request that the award be vacated.

## C. HOSPITAL'S ARGUMENTS

### (1) **Management's Judgment**

The Hospital contends the arbitrator invalidly substituted management's judgment for that of himself, dispensing his own brand of industrial justice (Docket No. 18 at pp. 3, 7 and 11). In particular, it points out that it adopted the Rules of Disciplinary Procedure with a list of rules/infractions along with the designated sanctions to be imposed for a violation of each rule/infraction. Depending on the infraction or frequency thereof the corresponding sanctions can go from a verbal admonishment to dismissal. *Id.*

Under Rule 74, the penalty for sleeping during working hours is dismissal (Docket No. 18, at pp. 5–7). Because it is undisputed that Rojas was sleeping on the job during working hours; that she had knowledge of the content of the rule; and that the rule was applied consistently, the Hospital claims the arbitrator should have sustained the dismissal. *Id.*

The adoption of Rule 74 is not dispositive. Like other disciplinary rules, it is subject to the collective bargaining agreement. According to Article XI, Section 11.1(c) of the agreement, the Hospital may discipline or dismiss employees if it has just cause. Likewise, Article XIII, Section 5(f) entrusts the arbitrator with the authority to reinstate employees to their jobs in case of dismissal, if it were determined that the dismissal was unjustified. Therefore, on its face, the contract expressly restricts and conditions management's prerogative to dismiss employees, by requir-

ing just cause and authorizing the arbitrator to order reinstatement if just cause for termination is lacking.

■ For the same reason, the dispute required the arbitrator to interpret and apply the concept of just cause negotiated in the agreement to the particular circumstances surrounding the dismissal. Rather than applying his own brand of industrial justice, the arbitrator acted within the scope of his authority. When the arbitrator constructs the proper meaning of the words "just cause" used in the contract, the award draws its essence from the collective bargaining agreement. *See, Eastern Associated Coal Corp. v. United Mine Workers*, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000)(so holding). Courts have no business overruling him because their interpretation of the contract may be different from his. *Dorado Beach Hotel v. Unión de Trabajadores de la Industria Gastronómica*, 959 F.2d 2, 4 (1st Cir.1992).

## (2) Precedential Value of Awards

The Hospital claims the arbitrator erred by ignoring arbitration awards that recognize that sleeping during working hours constitutes sufficient ground for dismissal (Docket No. 18 at pp. 3 and 9). The arbitrator interpreted and applied the concept of just cause to the specific circumstances of this case, relying on authorities he considered persuasive in dealing with the problem posed by sleeping on the job during working hours. His decision is rationally consistent with his findings. That he reached a conclusion not shared by other arbitrators in controversies related to different parties under different collective bargaining agreements, does not mean the award should be vacated.

■ It is black letter law that arbitration awards are not entitled to the precedential effect accorded to judicial de-

cisions. An arbitration award is not considered conclusive or binding in subsequent cases involving the same contract language but different incidents or grievances. *El Dorado Technical Services v. Unión General de Trabajadores*, 961 F.2d 317, 321 (1st Cir.1992)(so holding). Moreover, even prior arbitral awards rendered in disputes between the same parties under the same contract provision are not necessarily binding on successor arbitrators where-as appears to be the case here-the weight to be given to arbitral precedent is not dictated by the collective bargaining agreement. *See,* Elkouri & Elkouri, *How Arbitration Works*, 11–20, (Bloomberg BNA, Arlington, Va., 7th Ed.2012).

## (3) Compatibility with Law

Relying on case law under Law No. 80, the Hospital argues that in Puerto Rico a first offense justifies dismissal (1) when it threatens the order of the business and would make it improper to wait for a second occurrence to justify a termination; (2) where the underlying conduct endangers the good operation of the business or the security of other people, and (3) when the facts do not reflect an arbitrary decision (Docket No. 18 at p. 9).

Consistent with such view, it claims the conduct of a practical nurse like Rojas, assigned to geriatric and bedridden patients found sleeping during working hours for an unknown amount of time not only hindered the delivery of services Rojas was called upon to render, but that the Hospital should not be asked to wait for a patient to suffer a medical complication before it is considered justified to terminate a nurse for sleeping during working hours (Docket No. 18 at pp. 10–11).

Since the parties chose arbitration as the preferred means of resolving a work-

place dispute, the Court must read the pertinent statute in light of background labor law policy that favors determination of disciplinary questions through arbitration when chosen as a result of labor management negotiation. *Mercy Hospital v. Massachusetts Nurses Association,* 429 F.3d 338, 344 (1st Cir.2005). The inquiry then focuses on whether the award was in manifest disregard of the law. *McCarthy v. Citigroup,* 463 F.3d 87, 91 (1st Cir.2006). Such a manifest disregard is found where the record shows that the arbitrator recognized applicable law, but wilfully ignored it. *Id.*

The cases the Hospital has cited as support, *Delgado Zayas v. Hosp. Int. de Med. Avanzada,* 137 D.P.R. 643, 649 (1994) and *Secretary of Labor v. I.T.T.,* 108 D.P.R. 536 (1979), involve voluntary employee misconduct.[2] By contrast, in the instant case, the arbitrator found that the nurse's conduct had been involuntary (Docket No. 7, Exh. B at p. 24). In turn, the involuntary character of the employee's behavior was identified and relied upon in the award as a mitigating factor. *Id.* at p. 25.

Voluntariness has been considered in determining whether a dismissal should be sustained. *See,* Elkouri & Elkouri, *op cit.* pp. 15–41 (noting that sleeping on duty, at least where the act is *intentional* and the employee attempts to avoid detection, usually warrants termination even as a first offense). *See also, Ramos–Santiago,* 524 F.3d at 123 (sustaining award validating dismissal of employee who made conscious decision to violate the employer's rules).

In these circumstances, the Court is unable to conclude that the arbitrator acted with manifest disregard of the law.

#### (4) Evidentiary Support

The Hospital argues the arbitrator's findings are not supported by evidence. In this connection, it notes that no evidence was presented to show that (1) Rojas' work did not require rigorous supervision as her patients were not in a key stage of their recuperation process, and (2) that she was surrounded by other fellow nurses (Docket No. 18 at pp. 3, 7 and 11).

The Court has reviewed the record and agrees there is no evidence to support the first contention. But there is evidence supporting the second one. In particular, the Hospital's Human Resources Director (Ms. Mariel Cruz), testified that she was aware that there were more nurses in the counter at the moment Rojas was found sleeping (Docket No. 16, Exh. 1 at p. 19). The reconfigured factual setting does not, however, serve as grounds to vacate the award.

Public policy favoring the resolution of labor disputes is so strong the Supreme Court has observed that an award is insulated from judicial review even when based on a mistake of fact. *United Paperworkers Int'l Union v. Misco,* 484 U.S. 29, 37, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Mistakes of fact may be distinguished from non-facts. For this reason, in the First Circuit an award may be set aside if it is mistakenly based on a crucial assumption which is decidedly a non-fact. *UMass Memorial Medical Center,* 527 F.3d at 4.

---

**2.** *Delgado Zayas* involved a male employee's physical blocking of a female supervisor's exit from a restroom in an effort to persuade her to go out with him. The act restricted the supervisor's liberty; was perceived by her as humiliating, intimidating, and threatening; and the employer considered the conduct a violation of its sexual harassment policy. In *I.T.T.,* an employee lied to obtain an 8–day paid leave of absence even though the employer's rules of conduct provided that submitting false statements in application forms or in company records would result in immediate dismissal. Despite this rule, the Puerto Rico Supreme Court held the dismissal lacked just cause because, among other things, it found the offense did not have an appreciable effect on the employer's normal operations.

Yet the exception is limited. Courts do not sit to hear claims of factual error by an arbitrator as an appellate court does in reviewing decisions of lower courts. *United Paperworkers*, 484 U.S. at 37–38, 108 S.Ct. 364. From this perspective, the award must stand even if the arbitrator was mistaken about some of the facts. *Mercy Hospital v. Massachusetts Nurses Association*, 429 F.3d 338, 343 (1st Cir.2005); *El Dorado Technical Services*, 961 F.2d at 320. Consequently, the "non-fact" exception requires that the sole articulated basis for the award be a factual mistake, made out by the lack of evidence, but for which, according to the arbitrator's rationale, a different result would have been reached. *Electronics Corp. v. International Union of Elec., Radio and Mach. Workers*, 492 F.2d 1255, 1257 (1st Cir. 1974).

It is plain the test is not satisfied in this case. Patients' status is not the only articulated basis for the award. The award finds support in other factual findings, particularly the involuntary character of the employee's conduct and the presence of other nurses in the station.[3] Therefore, the decision will not be set aside on evidence grounds.

### III. CONCLUSION

The award does not fall within any of the recognized exceptions to unreviewability. The parties attach conflicting meanings to the term "just cause." They granted the arbitrator the authority to interpret and apply the term to the present circumstances consistently with the collective bargaining agreement and the law. It is a firm principle of federal labor law that where parties agree to submit a dispute to binding arbitration, absent unusual circum-

stances, they are bound the outcome of that proceeding. *Posadas de Puerto Rico Associates, Inc. v. Asociacion de Empleados de Casino de Puerto Rico*, 821 F.2d 60, 61 (1st Cir.1987).

Sleeping on the job is not acceptable behavior. As a problem, it should not be taken lightly. Yet it does not occur in a vacuum. The arbitrator considered the specific circumstances surrounding the incident that led to the nurse's dismissal for falling asleep on the job. His approach was no different than the fact-driven methodology reflected in judicial just cause determinations under Law No. 80. *See*, Capó–Matos, *op cit*. There is no incompatibility between the award and the law.

In light of the foregoing, Hospital Pavía's request that the award be vacated (Docket No. 18) is DENIED. The Union's request that the award be affirmed (Docket No. 24) is GRANTED. Judgment shall be entered accordingly.

**SO ORDERED.**

---

**3.** The presence of other nurses arguably would have allowed them to provide assistance to any patient in need. Despite having the burden to establish just cause under Arti-

cle 11 of Law No. 80, P.R. Laws Ann. tit. 29 § 185k, the Hospital did not provide evidence to the contrary.