UNION DE TRONQUISTAS DE PUER-
TO RICO, LOCAL 901, Ex. Elroy Don-
ovan, Plaintiff,

v.

UNITED PARCEL SERVICE,
INC., Defendant.

Civil No. 12–1694 (ADC).

United States District Court,
D. Puerto Rico.

Aug. 15, 2013.

Jose E. Carreras–Rovira, Jose E. Carr-
eras Law Office, San Juan, PR, for Plain-
tiff.

Enrique R. Padro, Fiddler Gonzalez &
Rodriguez, P.S.C, San Juan, PR, for De-
fendant.

## OPINION AND ORDER

AIDA M. DELGADO–COLON, Chief
Judge.

Plaintiff, Unión de Tronquistas de Puer-
to Rico ("plaintiff" or "Unión"), filed a
petition for review of an arbitration award
in case number A–11–1791 against defen-

dant, the United Parcel Service, Inc., ("UPS" or "defendant"), seeking to annul the award. Unión argues that the Arbitrator committed a manifest error of law when he concluded that the grievant, Elroy Donovan, was terminated for just cause. **ECF No. 1.**

Now before the Court is UPS's motion for summary judgment and statement of uncontested facts as well as Unión's opposition to UPS's summary judgment and defendant's reply. **ECF Nos. 7, 14, 17.** At issue is whether this Court should uphold the contested arbitration award.

## I. Factual Background

Unless otherwise noted, the following relevant facts are derived from defendant's statement of facts and plaintiff's responses. **ECF Nos. 7–3, 14–1.** The Court notes that Unión has accepted there are no material facts in the case. **ECF No. 14–1** at 2. Consistent with the summary judgment standard, the Court states the facts in the light most favorable to plaintiff, the nonmoving party. *See Iverson v. City of Boston,* 452 F.3d 94, 98 (1st Cir.2006). UPS and Unión are parties to a Collective Bargaining Agreement ("CBA") for St. Thomas and St. Croix. The CBA contains a mandatory grievance procedure to handle disputes that arise from disciplinary actions against union members or any matter related to the interpretation of the agreement. **ECF No. 17–2** at ¶ 1. The grievant, Elroy Donovan ("Donovan"), worked for UPS in the U.S. Virgin Islands as an Air Driver. **ECF No. 7–3** at ¶ 2. On June 30, 2009, Donovan was terminated from his employment with UPS pursuant to Articles 18 and 24 of the CBA. According to UPS, he was unable to perform the essential functions and duties of his position due to an injury he sustained more than two (2) years and/or 24 months ago. Consequently, he lost his seniority rights and his employment was terminated because UPS was under no obligation to

reserve his position after such time elapsed. **ECF No. 7–3** at ¶ 3.

Pursuant to the CBA's mandatory grievance procedure, Unión filed a grievance to challenge Donovan's termination at the Bureau of Conciliation and Arbitration of the Puerto Rico Department of Labor and Human Resources. The grievance was resolved through a final and binding arbitration in *United Parcel Service, Inc. and Unión de Tronquistas de Puerto Rico, Local 901,* case no. A–11–1791. The arbitration hearings were held on April 8, 2011 and May 25, 2012. There, the parties agreed to rely exclusively on the documentary evidence that was submitted to the arbitrator, and on their respective memorandums of law. **ECF No. 7–3** at ¶ 4. On July 9, 2012, the arbitrator, Jorge L. Torres–Plaza (the "arbitrator"), issued an award ("award"), holding that Donovan's termination was justified in accordance with the CBA and the applicable law. He found that Donovan was intermittently absent from work for more than two (2) years, after which he was not qualified or could not perform the essential functions of his position, and UPS was not compelled to reserve his employment pursuant to the CBA. **ECF No. 7–3** at ¶ 5.

The Arbitrator adopted from defendant's briefing the following uncontested factual findings:

(i) Donovan worked for UPS in the U.S. Virgin Islands as an Air Driver;

(ii) On June 28, 2007, Donovan suffered a work-related accident, while he was carrying out his package delivery duty;

(iii) As a result of said accident, Donovan was absent on June 29, July 2 and 3, 2007, and was under Chiropractic Health Centers' care. Donovan submitted a medical certificate from Chiropractic Health Centers for these absences, which stated that he was unable to return to work due to a "Conservative

Management Program" and that he was restricted because he could not perform "heavy lifting" and/or "prolonged sitting."

(iv) On July 5, 2007, Donovan visited Chiropractic Health Centers again and was authorized to return to work on July 9, 2007, with restrictions as to "lifting" and "prolonged sitting;"

(v) On July 10, 2007, Donovan met with Jorge González, UPS' District Workforce Planning Manager, to request a reasonable accommodation;

(vi) On July 18, 2007, Donovan requested worker's compensation benefits at the Worker's Compensation Division of the U.S. Virgin Islands' Department of Labor, regarding his June 28, 2007 injury;

(vii) On July 30, 2007, Donovan returned to work;

(viii) Donovan was again absent from work on August 13 and 14, 2007, due to his back injury, for which he submitted another medical certificate from the Chiropractic Health Centers, which also reiterated his restriction as to "heavy lifting;"

(ix) On August 14, 2007, Kevin L. Lenahan ("Lenahan"), from Chiropractic Health Centers, sent a communication to the U.S. Virgin Islands' Department of Labor, informing that an MRI proved Donovan's injury had worsened after returning to work, reflecting degenerative changes and "intervertebral disc involvement," which changed the prognosis of the case;

(x) Consequently, in said communication, Lenahan requested that Donovan be given a one (1) month leave from work with intensive chiropractic care (from 3 to 5 times per week) and a "Conservative Home Management Program;"

(xi) That month of absence was subsequently extended for another month, until October 15, 2007;

(xii) On December 20, 2007, Dr. Derek Burnett recommended that Donovan return to work with "Light Duty;"

(xiv) In a January 15, 2008 medical report, Dr. Derek M. Burnett determined that Donovan had an 8% impairment of the whole person for loss of general physiological functions, which is equivalent to the payment of benefits of $466 for 16 weeks.

(xv) On January 18, 2008, UPS denied Donovan's request for a reasonable accommodation because no vacant position was available at that time for which Donovan was qualified and capable of performing the essential job functions, with or without reasonable accommodation.

(xvi) On January 31, 2008, the Director of Workmen's Compensation of the U.S. Virgin Islands, Wanda L.C. Morris, ordered UPS to pay the U.S. Virgin Islands' State Insurance Fund the amount of $804.00 for expenses incurred in Donovan's treatment at Chiropractic Health Centers during the period between September 4 and October 4, 2007.

(xvii) UPS also paid a $241.20 penalty for not being duly insured.

(xviii) On June 30, 2009, UPS, by John Morales, then UPS' Labor Relations Manager terminated Donovan from his employment, pursuant to Article 18 of the Collective Bargaining Agreement.

(xix) On July 21, 2009, Rasha A. Harris, DPT, of Total Rehab & Wellness of St. Thomas, sent a communication to Dononvan, stating that Donovan was not capable of performing the duties of his position at UPS due to the position's requisite that he lift weight of up to 70 lbs.

(xx) In the letter, Rasha A. Harris stated that the aggravating factors to Donovan's condition were "standing too long", "driving too long", "bending over", and

"repeated lifting." Moreover, during his examination with Rasha A. Harris, Donovan acknowledged that, as a UPS driver, he was required to lift up to 70 lbs independently, and that he felt he was unable to return to his Air Driver duties at UPS because he could not meet the independent lifting requirement for the position.

(xxi) Finally, on October 5, 2009, the U.S. Virgin Islands' Labor Department awarded Donovan an 8% of disability, pursuant to Dr. Derek M. Burnett's January 15, 2008 report, which equated to a total disability compensation of $7,456.00, to be paid to Donovan through an initial payment of $2,456 and 5 payments of $1,000, beginning in November, 2009.

ECF No. 7–3 at ¶ 6.

## II. Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." *Thompson v. Coca–Cola Co.,* 522 F.3d 168, 175 (1st Cir.2008) (quoting the former Fed.R.Civ.P. 56(c)).[1] When ruling on a motion for summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences." *Cox v. Hainey,* 391 F.3d 25, 27 (1st Cir.2004).

However, the non-movant "must point to competent evidence and specific facts to stave off summary judgment" in order to defeat a properly-supported motion for summary judgment. *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London,* 637 F.3d 53, 56 (1st Cir.2011). Thus, the court may "afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Id.* (quoting *Rogan v. City of Boston,* 267 F.3d 24, 27 (1st Cir.2001)). In addition, the "absence of evidence on a critical issue weighs against the party—be it either the movant or non-movant—who would bear the burden of proof on that issue at trial." *Alamo Rodríguez v. Pfizer Pharma.,* 286 F.Supp.2d 144, 151 (D.P.R.2003) (citing *Pérez v. Volvo Car Corp.,* 247 F.3d 303, 310 (1st Cir. 2001)).

■ "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Thompson,* 522 F.3d at 175 (quoting *Sánchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir.1996)) (internal quotation marks omitted). "A fact is material if it has the potential of determining the outcome of the litigation." *Maymí v. P.R. Ports Auth.,* 515 F.3d 20, 25 (1st Cir.2008). To defeat a properly supported motion for summary judgment, evidence offered by the non-movant "must be significantly probative of specific facts." *Pérez v. Volvo Car Corp.,* 247 F.3d 303, 317 (1st Cir.2001) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). As a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vázquez v. López–Rosario,* 134 F.3d 28, 33 (1st Cir.1998). Finally, it is well settled

---

**1.** While Rule 56 was amended in December of 2010, "the substantive standard for summary judgment remain[ed] unchanged." *Ahern v. Shinseki,* 629 F.3d 49, 54 n. 2 (1st Cir.2010) (citing Fed.R.Civ.P. 56 advisory committee's note). The primary alteration is the inclusion of a "procedures" section which, in part, incorporates a common procedure for presentation of factual evidence and an anti-ferreting rule, similar to those already in place in this District, into the summary judgment standard. *Compare* Fed.R.Civ.P. 56(c) & (f).

that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

### III. Discussion

■ The Court prefaces this discussion by noting that the standard of review applied to arbitration awards is "extremely narrow and exceedingly deferential." *Bangor Gas Co. LLC v. H.Q. Energy Services (U.S.) Inc.,* 695 F.3d 181, 186–87 (1st Cir.2012) (quoting *Bull HN Info. Sys., Inc. v. Hutson,* 229 F.3d 321, 330 (1st Cir. 2000)). Since the FAA "embodies a national policy favoring arbitration," *id.* (quoting *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)), the statute provides a narrow set of grounds to vacate an award. The statute provides four grounds to vacate an award: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators, or either of them; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a).

■ The First Circuit Court of Appeals has also "recognized a common law ground for vacating arbitration awards that are in " 'manifest disregard of the law.' " " *id.* (quoting *McCarthy v. Citigroup Global Mkts. Inc.,* 463 F.3d 87, 91 (1st Cir.2006)), but limited its scope to "cases where the award conflicts with the plain language of the contract or where 'the arbitrator rec-

ognized the applicable law, but ignored it.' " *Id.* (quoting *Gupta v. Cisco Sys., Inc.,* 274 F.3d 1, 3 (1st Cir.2001)). However, the First Circuit has noted that the Supreme Court cast doubt on the manifest-disregard doctrine in *Hall Street Associates, L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008). The Supreme Court " 'h[e]ld that [9 U.S.C. § 10] ... provide[s] the FAA's *exclusive* grounds for expedited vacatur.' " *Id.* at 584, 128 S.Ct. 1396 (emphasis added). *Bangor Gas Co. LLC v. H.Q. Energy Services (U.S.) Inc.,* 695 F.3d at 187. Albeit in dicta, this has caused a circuit split with the First Circuit on the grounds that a "manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the Federal Arbitration Act," *Id.* (quoting *Ramos–Santiago v. United Parcel Serv.,* 524 F.3d 120, 124 n. 3 (1st Cir.2008)). Since the First Circuit has not overruled the manifest-disregard doctrine, this court is held by First Circuit precedent and provides all grounds for review of the arbitration award.

With these precepts, we turn to defendant's motion for summary judgment. In essence, defendant requests that the Court dispose of plaintiff's petition for review of the arbitration award because plaintiff failed to prove any ground by which the Court could vacate the award. Defendant contends that Unión failed to demonstrate that the arbitrator's interpretation of the CBA was implausible or that the arbitrator knew the law and intentionally decided not to apply it. **ECF No. 7–1.** Unión, on the other hand, opposes summary judgment, arguing that the arbitrator committed an error of law and exceeded his jurisdiction. Unión avers that the arbitrator modified the clear provisions of the CBA when he determined that Donovan's dismissal was justified. **ECF No. 14.** After reviewing parties' briefs, the uncontested facts in this

case, and the applicable standard of review for arbitration awards, the Court agrees with UPS. Unión has not shown that any of the narrow grounds to vacate the arbitration award are present here.

Relying on and incorporating UPS's memorandum of law as his own, the arbitrator found that Donovan's dismissal was justified for the following reasons: (1) Section 2 of the Wrongful Discharge Act of the Virgin Islands, 24 V.I.C. § 76 ("Section 2"), sets forth nine (9) reasons for an employee's just termination, one of which is the employee's continuous absences from his place of employment affect the interests of his employer; (2) Section 2 also explicitly states that the reasons for just termination may be modified by union contract; (3) the Worker's Compensation Act of the Virgin Islands imposes a statutory obligation requiring reinstatement of the injured employees upon termination of the disability if the employee demonstrates that his disability has ended and that he has requested reinstatement in his employment, unless the employee cannot carry out the duties and responsibilities of his position due to his injury; (4) the reinstatement obligation is triggered only if the employee is capable of performing the functions of his position; (5) in light of this provision, the disability of the injured worker to perform the duties of his position would be a justified cause for dismissal; (6) Donovan's dismissal was justified because, after he was released in January of 2008, he was unable to work and said disability continued until, at least, July 21, 2009.

Turning to the CBA, the arbitrator also found additional grounds to justify the dismissal. Article 18 of the CBA, includes among the reasons an employee may lose seniority: (b.) discharge for just cause and (e.) work or non work related illness or injury for more than two (2) years. In light of these provisions, the arbitrator concluded that Donovan's dismissal was justified and he lost his seniority accordingly. Furthermore, upon comparing Article 18 with Article 24, Section 6 of the CBA,[2] the arbitrator addressed the difference between the two provisions by stating that Article 18 establishes when an employee loses his seniority due to injury or illness, while Article 24 establishes that an employee retains his position for a period of up to twenty-four (24) months.

Since Article 18 does not provide for the date of accrual for the two year seniority reservation period, the arbitrator took the analogous provision of defendant's CBA for UPS Puerto Rico (Article 27, Section 3), and an arbitration award interpreting said article, to determine that the employment reservation period begins from the date of the accident. Thus, the arbitrator concluded that the "more than two year term" provided for defendant's CBA for the U.S. Virgin Islands should commence from the date of the accident. Here, the uncontested facts hold that the accident occurred on June 28, 2007; therefore, the arbitrator concluded that the period had expired at the time that Donovan was terminated on June 30, 2009. Accordingly, the arbitrator also concluded that the two year employment reservation term, afforded in the CBA, should also commence at the time of the accident.

Finally, the arbitrator found that the Worker's Compensation Act of the Virgin Islands imposes upon the employer the duty to reinstate an employee as long as the employee is able to perform the func-

---

**2.** Article 24 states, in pertinent part, the following: "Upon returning to work, a seniority employee who had been absent as a result of injury, illness, vacation, or approved leave of absence, other than for military leave shall retain for a period of up to twenty-four (24) months his regular position of work, if such work is still in existence."

tions of the position he held with the employer. The arbitrator found that Donovan was unable to perform these functions when: (1) he requested a reasonable accommodation on July of 2007; and (2) his disability continued post-termination because Donovan accepted that he was unable to carry out his functions 21 days after UPS terminated him.[3] Thus, he concluded that Donovan's dismissal was justified since he did not have a right to reinstatement because he was incapable of performing his job functions.

■ Although Unión argues that the arbitrator exceeded its powers because his interpretation is a modification of the CBA, careful review of the analysis proves otherwise. The CBA contains clauses that required the arbitrator's interpretation. Juxtaposing the two clauses and cross-referencing those clauses with analogous clauses of the defendant's CBA in Puerto Rico, the arbitrator found that the CBA modified the statutory provisions of the U.S. Virgin Island's Worker's Compensation Statute. Said statute explicitly provides for and authorizes amendments through a Collective Bargaining Agreement, such as the one at bar. Pursuant to the provisions of the CBA and parties stipulation, the arbitrator was called upon to determine whether Donovan's dismissal was justified. **ECF No. 7–7** at 2. He did just that. Although Unión protests much about the arbitrator's interpretation of the CBA, the same withstands our narrow scrutiny. The Court does not find the arbitrator's award falls under any of the statutory grounds that would warrant vacateur. The arbitrator's interpretation became the will of the parties when they ratified the arbitration clause in their CBA

and agreed to submit the merits of Donovan's termination to arbitration. "When parties include an arbitration clause in their collective-bargaining agreement, they are choosing to forego a number of legal options in favor of having their disputes regarding the construction of that contract settled by an arbitrator. As this was the bargain the parties struck, they are bound by the arbitrator's decision. In the spirit of freedom of contract then, we cannot review the merits of the underlying dispute and are obligated to enforce the arbitral award unless the decision fails to draw[ ] its essence from the collective bargaining agreement." *Ramos–Santiago v. United Parcel Service*, 524 F.3d 120, 123–124 (1st Cir.2008) (citations and quotations omitted). In this same vein, the First Circuit has cautioned that, is such cases, "[j]udicial intrusion is restricted to extraordinary situations indicating abuse of arbitral power." *Eastern Seaboard Const. Co., Inc. v. Gray Const., Inc.*, 553 F.3d 1, 6 (1st Cir.2008) (citing *Raytheon Co. v. Computer Distrib., Inc.*, 632 F.Supp. 553, 557 (D.Mass.1986)).

Unión argues that Donovan's termination was unjustified because UPS was required to reinstate Donovan when he was released by the U.S. Virgin Island's Department of Labor. Plaintiff states that the arbitrator's interpretation modifies the CBA's contractual language. **ECF No. 17** at 8–9. However, as highlighted above, this Court finds that the arbitrator was merely construing the two disputed provisions of the CBA. He drew comparisons from the CBA in Puerto Rico and interpreted the U.S. Virgin Islands CBA accordingly. In finding Donovan's dismissal justified, the arbitrator provided reasoning

---

**3.** UPS requires drivers and couriers to carry up to 70 pounds independently. In a July 21, 2007 report, Donovan stated that he was not able to return to his duties for fear of worsening his condition and that he would be unable

to keep an efficient pace. Further, the report concluded that, based on the test results administered, he would be unable to meet the lifting requirement for the position.

drawn from the two pertinent clauses of the CBA. Upon examining Articles 18 and 24 of the CBA, the arbitrator had a plausible basis to conclude: (1) that Unión and UPS stipulated that in cases of accidents or injuries, such as the one at bar, the employee has the right to having his employment reserved for a period that does not exceed twenty four (24) months, starting from the date of the accident or the beginning of the injury or illness; (2) that if such period exceeds twenty four (24) months due to illness or injury, then the employee loses his seniority; and (3) Donovan's termination occurred after the twenty four (24) month reservation period expired and UPS was not required to reserve his employment any further under the CBA.[4]

The Court also notes, despite plaintiff's challenge that the Worker's Compensation Act of the Virgin Islands does not afford a time limit to reinstatement after injury, it does not address the undisputed fact that the Act requires reinstatement only to those who are able to perform the duties and responsibilities of the position, which Donovan admittedly could not perform at the time of his release. The uncontested facts establish that, even twenty-one (21) days after UPS terminated Donovan, he was examined and it was concluded that he could not lift weight up to 70 lbs, a requisite for the position. Therefore, even if the Court were to examine the reinstatement remedy under the Worker's Compensation Act, as plaintiff requests us to do, the arbitrator's interpretation is plausible inasmuch as Donovan was unable to perform the functions of his position, which is a prerequisite to reinstatement under the Act. This reasoning was also addressed in defendant's brief, which the arbitrator adopted in full. *See* **ECF No. 7–9** at 18–21.

■ Again, the Court makes no determination as to the correctness or propriety of the arbitration award or whether it would have concluded the same, given another standard of review. The Court merely finds that the arbitrator reasonably construed the pertinent clauses of the CBA. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (holding that if the arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority," the court may not overturn the arbitrator's decision.) As the First Circuit Court of Appeals has made clear, courts may not set aside an arbitration award, even if it is convinced that the arbitrator committed a serious error of fact or law. *UMass Mem'l Med. Ctr., Inc. v. United Food & Commercial Workers Union, Local 1445,* 527 F.3d 1, 5 (1st Cir.2008), (*citing Cytyc Corp. v. DEKA Prods. Ltd. P'ship,* 439 F.3d 27, 32 (1st Cir.2006)). *Asociación de Empleados del Estado Libre Asociado de Puerto Rico v. Unión Internacional de Trabajadores de la Industria de Automóviles, Aeroespacio e Implementos Agrícolas, U.A.W. Local 1850,* 559 F.3d 44, 47 (1st Cir.2009). "So far as the arbitrator's decision concerns construction of the [CBA], the courts have no business overruling him because their interpretation of the contract is different from his." *Dorado Beach Hotel Corp. v. Union de Trabajadores de la Industria Gastronómica de Puerto Rico,* 959 F.2d 2, 4 (1st Cir.1992) (citations and quotation marks omitted). Likewise, Unión's interpretation of the CBA's clauses can not supplant the arbitrator's criteria, nor can it serve as reasoning to vacate the award. Given this narrow scope of our review, the Court simply finds no reason to overturn the arbitrator's decision here.

---

**4.** In essence, the arbitrator concluded that Donovan could not displace an employee under Article 24 because he had lost his seniority rights under Article 18.

As the Supreme Court recently noted, "[s]o long as the arbitrator was arguably construing the contract—which this one was—a court may not correct his mistakes under § 10(a)(4). *Eastern Associated Coal Corp. v. United Mine Workers of America, Dist. 17,* 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (internal quotation marks omitted). The potential for those mistakes is the price of agreeing to arbitration. As we have held before, we hold again: 'It is the arbitrator's construction [of the contract] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.'" *Oxford Health Plans, LLC v. Sutter,* —— U.S. ——, 133 S.Ct. 2064, 2070, 186 L.Ed.2d 113 (2013), (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)).

In this case, the arbitrator was called upon by parties to determine whether Donovan's dismissal was justified. The arbitrator did what the parties requested: he incorporated the defendant's brief and provided an interpretation of the CBA which resolved the issue.[5] Unión does not get a second bite at the apple to dispute the same matter which was already resolved through arbitration. "Under § 10(a)(4), the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all." *Oxford Health Plans, LLC v. Sutter,* 133 S.Ct. at 2071. Because he did, and in so doing, did not exceed his powers, this Court is unable to grant Unión the relief it now requests. "The arbitrator's construction holds, however good, bad, or ugly." *Oxford Health Plans, LLC v. Sutter,* 133 S.Ct. at 2071.

### IV. Conclusion

Based upon the foregoing, defendant's motion for summary judgment (**ECF No. 7**) is **GRANTED.** Unión's Petition for Review of the arbitration award (**ECF No. 1**) is **DENIED.** The Petition is hereby **DISMISSED WITH PREJUDICE.** Clerk is to enter judgment accordingly.

**SO ORDERED.**

---

**5.** The Court notes that "[a]lthough arbitrators frequently elect to explain their decisions in written opinions, they are under no compulsion to do so." *Zayas v. Bacardi Corp.,* 524 F.3d 65, 70 (1st Cir.2008). Here, the arbitrator adopted defendant's brief as his own.